

NORTH CAROLINA

GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25 CVS _____

25CV004387-400

| | |
|---|---|
| TRIAD PROPERTY INVESTMENTS, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| OHIO SECURITY INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) |

**COMPLAINT**

**COMES NOW** Plaintiff, Triad Property Investments, LLC, by and through undersigned counsel, pursuant to Rules 7 and 8 of the North Carolina Rules of Civil Procedure, and hereby alleges and complains of Defendant Ohio Security Insurance Company ("Defendant") as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      Plaintiff Triad Property Investments, LLC ("Plaintiff") is a domestic limited liability company duly organized and existing under the laws of North Carolina, and at all times relevant hereto, was operating and doing business in North Carolina, including Guilford County, North Carolina.

2.      Upon information and belief, Defendant is a foreign company with its principal place of business in Boston, Massachusetts, and, at all times relevant hereto, was authorized to conduct and was conducting business in Guilford County, North Carolina.

3.      Upon information and belief, Defendant is a subsidiary of Liberty Mutual Group, Inc., and/or a subsidiary of Liberty Mutual Insurance Company and/or a subsidiary of Liberty

Mutual Personal Insurance Company who at all times relevant hereto had a regional office in Raleigh, North Carolina, where Defendant also operated and had its regional office.

4. This Court has jurisdiction over the parties to and the subject matter of this action, and venue is proper in this Court.

**FACTUAL BACKGROUND**

5. The above paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

6. On September 1, 2019, a hailstorm took place (the "2019 Storm") causing damage to Plaintiff's property located at 106 College Rd., Greensboro, North Carolina 27410 (the "Property").

7. At the time of the 2019 Storm, Plaintiff was insured by a policy of insurance through Defendant, which included hail and wind damage coverage.

8. On or about February 25, 2020, Plaintiff submitted a claim to Defendant (the "2020 Claim") requesting payment for the damages to its Property pursuant to the policy.

9. Defendant conducted an initial inspection of the Property followed by an inspection done by its expert investigator (the "Expert") on March 9, 2020.

10. Defendant subsequently provided Plaintiff with a report of the Expert's findings (the "2020 Report"). See attached 2020 Report as Exhibit A.

11. The Expert concluded the following in the 2020 Report:

- Based on the study of the collateral indicators, hail up to ¾ inch in diameter fell at this site.
- Hail smaller than 2 inches in diameter lacks sufficient mass and or velocity to damage unballasted EPDM membranes.
- The roof is not damaged by hail impacts or wind uplift.
- The tented/wrinkled EPDM material is attributable to shrinkage and the installation of the material.

2

- The two tears in the EPDM roof membrane are man-made and are not consistent with hail impact.

12.     The Expert only noted two areas of damage to the roof at the time, which were two very minor tears in the EPDM roof membrane up to 1 ¼ inches long.

13.     At no point in the 2020 Report did the Expert note any wear and tear, deterioration, or maintenance/workmanship-related issues with the Property's roof.

14.     At no point in the 2020 Report did the Expert say or conclude that the EPDM membrane was improperly installed.

15.     At no point in the 2020 Report did the Expert note any repairs or work needing to be done to the roof.

16.     On March 20, 2020, Defendant denied coverage of the 2020 Claim related to the 2019 Storm damage to the Property, relying on the Expert's opinions and conclusions in the 2020 Report to support Defendant's conclusions for denial of coverage (the "2020 Denial Letter"). See attached the 2020 Denial Letter as Exhibit B.

17.     At no point in the 2020 Denial Letter did Defendant require or mention repairs or work needing to be done to the Property.

18.     Defendant, who based its reason for denial on the 2020 Report, denied coverage for the following reasons as stated in the 2020 Denial Letter:

> In reviewing the policy language above, damages that are a result of wear and tear, deterioration, shrinking and maintenance/workmanship-related issues are excluded under your policy. Additionally, water entered the building through the openings from the improperly installed membrane around the parapet wall. As referenced in the policy language above, damages to the interior of a building from rain water are not covered unless the building or structure first sustains damage by a covered cause of loss to its roof or walls through which the rain, snow, sleet, or ice enters. Also, leaks that repeat for a period of 14 days or more are not covered.

3

19. None of the above-referenced reasons for denying coverage are mentioned in the 2020 Report, which report Defendant relied on in coming to these conclusions to deny coverage except for the term, "shrinkage".

20. The term "shrinkage" is utilized in the policy (4) times, and is extremely vague in meaning, though, it is clear that the term as used in the policy is not defined as Defendant represented in its 2020 Denial Letter.

21. The term "shrinkage" as used in the policy is used to discuss the structural integrity of the building as a whole and could not be construed to mean the shrinking of a roof membrane atop the building.

22. Therefore, Defendant's reliance on the term shrinkage being defined as that of the shrinking of the roof membrane is improper and misplaced and was not a valid reason for denial of coverage.

23. Defendant, in writing its 2020 Denial Letter, misrepresented the cause of damage to the Property and condition of the roof by creating its own, unsupported conclusions, passing them off as the Expert's conclusions, which are not found in the Expert's conclusions in the 2020 Report.

24. On March 26, 2023, Plaintiff entered into a contract of insurance (the "Policy") with Defendant to procure insurance coverage of the Property.

25. The Policy issued by Defendant to Plaintiff bore the policy number BKS596264505, and is attached hereto as Exhibit C. (the "Policy").

26. Plaintiff paid premiums to obtain coverage for wind and hail damage to the Property, making such damage a covered loss under the Policy.

27. Plaintiff consistently and regularly paid its premiums for the Policy.

4

28.     On August 15, 2023, the Property was damaged by a severe storm (the "2023 Storm") in Guilford County, North Carolina.

29.     At the time of the 2023 Storm, the Policy was in full force and effect.

30.     The Property was damaged by wind and hail as a result of the 2023 Storm as it damaged the roof, causing significant water leaks into the internal structure of the Property.

31.     On or about December 6, 2023, Plaintiff submitted a claim to Defendant (the "2023 Claim") requesting payment for the damages to its Property pursuant to the Policy.

32.     Defendant conducted an inspection of the Property on December 19, 2023.

33.     As a result of the 2023 inspection, Defendant denied coverage (the "2023 Denial Letter") stating specifically:

> The inspection found no termination bars were used to attach the EPDM membrane to the parapet walls. The EPDM membrane had shrunk and pulled away from the walls and from around the drain in the middle of the roof. Duct tape was used to reattach the membrane to the walls. The EPDM membrane was not properly attached to the roof drain and water was entering under the membrane and seeping to the interior of the building. The flashing on the rear perimeter of the roof had deteriorated and rusted and was separated from the wall. The roof was previously inspected by this same adjuster in February 2019 and during that inspection the same faulty and inadequate in station were observed. During the recent inspection to the roof no new repairs were found to the roof.

> The inspection found no repairs were made to the faulty and inadequate workmanship of the installation of the EPDM that were observed during our inspection in February 2019. In reviewing the policy language above, damages that are the result of wear and tear, deterioration, faulty, inadequate design, shrinking and maintenance/workmanship-related issues are excluded under your policy. Additionally, water entered the building through the openings from the improperly installed membrane around the parapet wall. As referenced in the policy language above, damages to the interior of a building from rainwater are not covered unless the building or structure first sustains damage by a covered cause of loss to its roof or walls through which the rain, snow, sleet, or ice enters. Also, leaks that repeat for a period of 14 days or more are not covered.

5

34. Defendant never previously indicated to Plaintiff that repairs were needed or required to Property.

35. Defendant relied on the same conclusions made in its 2020 Denial Letter in support for its current reasons for denying coverage for the 2023 Claim; however, Defendant in writing its 2020 Denial Letter misrepresented the cause of damage to the Property and condition of the roof by creating its own, unsupported conclusions, passing them off as the Expert's conclusions that are not found in the Expert's conclusions in the 2020 Report.

36. Thus, any such reliance on the 2020 Denial Letter and investigation is an improper representation of what caused the damage to the Property.

37. None of the above-referenced reasons for denying coverage are mentioned in the 2020 Report, which such report Defendant relied on in coming to the conclusion to deny coverage of the 2020 Claim except for the term, "shrinkage".

38. The term "shrinkage" is utilized in the Policy 4 times, and is extremely vague in meaning, though, it is clear that the term as used in the Policy is not defined as Defendant represented in its 2023 Denial Letter or 2020 Denial Letter.

39. The term "shrinkage" as used in the Policy is used to discuss the structural integrity of the building as a whole and could not be construed to mean the shrinking of a roof membrane atop the building.

40. Therefore, Defendant's reliance on the term shrinkage being defined as that of the shrinking of the roof membrane is improper and misplaced and was not a valid reason for denial of coverage.

41. Further, Defendant shows no supporting information for its baseless conclusions in its 2023 Denial Letter.

6

42.     As a result of relying on its 2020 Denial Letter and investigation—that misrepresented the 2020 Report Defendant relied on to come to Defendant's denial reasons in the 2020 Denial Letter, that misrepresented the term "shrinkage", and that failed to mention or indicate to Plaintiff that the Property needed or required repairs—Defendant, in writing its 2023 Denial Letter, again misrepresented the cause of damage to the Property and condition of the roof by creating its own, unsupported conclusions.

43.     To date, Defendant has unreasonably refused to pay for the damage done to the Property and has failed to provide coverage for the 2023 Claim.

## FIRST CAUSE OF ACTION
### (Negligent Misrepresentation)

44.     The above paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

45.     In the course of Defendant's business, Defendant had a financial interest in the transaction of handling Plaintiff's 2023 Claim and 2019 Claim.

46.     As a result of receiving Plaintiff's 2023 Claim and 2019 Claim, Defendant supplied information to Plaintiff through its 2020 Denial Letter and 2023 Denial Letter providing the basis of its claim denials.

47.     Defendant intended for Plaintiff to rely on that information for guidance and information related to the denial of the 2019 Claim and 2023 Claim.

48.     The reasons behind Defendant's denials of the 2019 Claim and 2023 Claim were false as Defendant misrepresented pertinent facts relating to coverages at issue, specifically misrepresented the cause of the damage to the Property and condition of the roof by creating its own, unsupported conclusions, passing them off as expert conclusions that were not made by its

7

investigating Expert; misrepresented insurance policy provisions relating to coverages at issue, specifically misrepresented the term "Shrinkage" as written in its Policy, defining it differently than it is implied to be and read as when reading it with the Policy language as a whole; and by claiming repairs were never made when Defendant never previously indicated to Plaintiff that the Property needed or required any such repairs.

49.     Defendant failed to exercise reasonable care or competence in obtaining or communicating the false information to Plaintiff.

50.     Plaintiff actually relied on the false information supplied by Defendant when it was originally circulated to Plaintiff in the 2020 Denial Letter, which is ultimately now affecting Plaintiff's right to coverage under the Policy for the 2023 Claim as the same misrepresentations are being made by Defendant again, and that Plaintiff's reliance was justifiable because under the same or similar circumstances, a reasonable person, in the exercise of ordinary care, would have relied on the false information.

51.     Plaintiff's reliance on the false information provided by Defendant proximately caused Plaintiff to incur financial damage in an amount in excess of $25,000.00 for Defendant's failure to provide coverage for the 2023 Claim.

52.     As a result of the aforementioned negligent misrepresentations, Plaintiff is entitled to recover from Defendant an amount in excess of $25,000.00.

## SECOND CAUSE OF ACTION
**(Breach of Contract)**

53.     The above paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

54.     The Policy is an enforceable contract of insurance between Plaintiff and Defendant.

8

55.     The Policy was in full force and effect at all times relevant to this action.

56.     Plaintiff paid all premiums due under the Policy in a timely and proper manner.

57.     Plaintiff has complied with all its duties under the Policy.

58.     Plaintiff has presented a claim under the Policy to Defendant for wind and hail damage to the Property as covered by the Policy—the 2023 Claim.

59.     Defendant has refused to pay the 2023 Claim for wind and hail damage to the Property as covered by the Policy.

60.     By refusing to pay Plaintiff's 2023 Claim for wind and hail damage to the Property resulting from the 2023 Storm, Defendant has breached its contract with Plaintiff.

61.     As a result of Defendant's breach of contract, Plaintiff has sustained damages in an amount in excess of $25,000.00.

62.     As a result of Defendant's breaches of the contract, Plaintiff is entitled to recover from Defendant an amount in excess of $25,000.00.

## THIRD CAUSE OF ACTION
### (Violation of Chapter 58 – Obligation of Good Faith and Fair Dealing)

63.     The above paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

64.     The conduct of Defendant in the business of insurance is in or affecting commerce and falls under Chapter 58 of the North Carolina General Statutes.

65.     Defendant has committed numerous unfair or deceptive acts of misconduct toward Plaintiff in the handling of the 2023 Claim and 2019 Claim related to wind and hail damage to the Property.

9

66.    The unfair or deceptive acts of misconduct of Defendant, include but are not limited to the following:

   a.    Misrepresenting pertinent facts relating to coverages at issue, specifically misrepresenting the cause of the damage to the Property and condition of the roof by creating its own, unsupported conclusions, passing them off as expert conclusions that were not made by its investigating Expert;

   b.    Misrepresenting insurance policy provisions relating to coverages at issue, specifically misrepresenting the term "Shrinkage" as written in its Policy, defining it differently than it is implied to mean when reading it with the Policy language as a whole;

   c.    Claiming repairs were never made when Defendant never previously indicated to Plaintiff that the Property needed or required any such repairs;

   d.    Not attempting in good faith to effectuate prompt, fair, and equitable settlement of Plaintiff's 2023 Claim, in which damages have become reasonably clear;

   e.    Refusing to pay Plaintiff's 2023 Claim for the wind and hail damage to the Property from the 2023 Storm;

   f.    Compelling Plaintiff to institute litigation to recover amounts due under the Policy;

   g.    Otherwise acting unreasonably, maliciously, unscrupulously, and deceptively;

   h.    Otherwise violating Chapter 58 of the North Carolina General Statutes; and

   i.    Otherwise engaging in unfair or deceptive misconduct toward Plaintiff to be proven at the trial of this matter.

67.    The misconduct of Defendant in denying coverage for the 2023 Claim was willful, wanton, malicious, and done in bad faith.

68.     As a result of Defendant's unfair and deceptive violations of Chapter 58 of the North Carolina General Statutes, Plaintiff has sustained damages in an amount in excess of $25,000.00, including but not limited to, at the election of Plaintiff, treble damages under Chapter 75 of the North Carolina General Statutes or punitive damages under Chapter 1D of the North Carolina General Statutes.

### FOURTH CAUSE OF ACTION
**(Unfair or Deceptive Trade Practices – Chapter 75)**

69.     The above paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

70.     The conduct of Defendant as described herein, was performed in commerce, and/or was affecting commerce.

71.     The conduct of Defendant, as described herein, violated Chapter 75 of the North Carolina General Statutes independent of any and all violations of Chapter 58 of the North Carolina General Statutes.

72.     The misconduct of Defendant, as described herein, was immoral, unethical, unscrupulous, oppressive, substantially injurious to consumers, including Plaintiff, and against the public.

73.     Defendant used its position of power of Plaintiff to disadvantage Plaintiff by falsely misrepresenting pertinent facts relating to coverages at issue, specifically misrepresenting the cause of the damage to the property and condition of the roof by creating its own, unsupported conclusions, passing them off as expert conclusions that were not made by its investigating Expert; misrepresenting insurance policy provisions relating to coverages at issue, specifically misrepresenting the term "Shrinkage" as written in its Policy, defining it differently than it is

11

implied to mean when reading it with the Policy language as a whole; claiming repairs were never made when Defendant never previously indicated to Plaintiff that the Property needed or required any such repairs; forcing Plaintiff to hire counsel; and otherwise engaging in improper and unlawful misconduct to be proven at the trial of this matter.

74.     The misconduct of Defendant in denying coverage for the 2023 Claim was willful, wanton, malicious, and done in bad faith.

75.     As a result of Defendant's unfair and deceptive violations of Chapter 75 of the North Carolina General Statutes, Plaintiff has sustained damages in an amount in excess of $25,000.00, including but not limited to, at the election of Plaintiff, treble damages under Chapter 75 of the North Carolina General Statutes.

### FIFTH CAUSE OF ACTION
**(Bad Faith)**

76.     The above paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

77.     Defendant unreasonably denied payment for all covered damages incurred by Plaintiff as a result of the 2023 Storm.

78.     Defendant unreasonably misrepresented the cause of the damage to the Property and condition of the roof by creating its own, unsupported conclusions, passing them off as expert conclusions that were not made by its investigating Expert.

79.     Defendant unreasonably misrepresented the term "Shrinkage" as written in its Policy, defining it differently than it is implied to be and read as when reading it with the Policy language as a whole.

12

80.     Defendant unreasonably claimed that repairs were never made when Defendant never previously indicated to Plaintiff that the Property needed or required any such repairs.

81.     Defendant had a duty to reach an agreement to not unreasonably deny payment for all covered damages incurred by Plaintiff as a result of the 2023 Storm.

82.     Defendant had a duty not to unreasonably misrepresent the cause of the damage to the Property and condition of the roof by creating its own, unsupported conclusions, passing them off as expert conclusions that were not made by its investigating Expert.

83.     Defendant had a duty not to unreasonably misrepresent the term "Shrinkage" as written in its Policy, defining it differently than it is implied to be and read as when reading it with the Policy language as a whole.

84.     Defendant had a duty not to unreasonably claim that repairs were never made when Defendant never previously indicated to Plaintiff that the Property needed or required any such repairs.

85.     Defendant has acted in bad faith in at least one or more of the following ways:

    a.   Unreasonably failing to pay the full amount owed for the covered loss caused by the 2023 Storm that severely damaged the Property;

    b.   Unreasonably withholding payment of moneys owed for covered losses in violation of the Policy's terms and conditions despite Plaintiff's compliance with the same;

    c.   Misrepresenting the cause of the damage to the Property and condition of the roof by creating its own, unsupported conclusions, passing them off as expert conclusions that were not made by its investigating Expert;

    d.   Misrepresenting the term "Shrinkage" as written in its Policy, defining it differently than it is implied to mean when reading it with the Policy language as a whole;

13

e. Claiming repairs were never made when Defendant never previously indicated to Plaintiff that the Property needed or required any such repairs;

f. Failing to reach an agreement with Plaintiff regarding payment for the covered loss; and

g. Otherwise acting in bad faith in failing to make all payments owed in handling Plaintiff's 2023 Claim under the Policy.

86. The actions and/or failures to act on the part of Defendant were willful, wanton, malicious, and without justification or excuse to further the improper objectives of Defendant and with conscious intent to injure Plaintiff and/or disregard the interests of Plaintiff to the prejudice and detriment of Plaintiff in violation of common law.

87. Defendant's bad faith described herein proximately caused Plaintiff to suffer damages in an amount in excess of $25,000.00.

88. As a result of the aforementioned bad faith, Plaintiff is entitled to recover from Defendant an amount, including punitive damages, in excess of $25,000.00.

## SIXTH CAUSE OF ACTION
### (Breach of the Covenant of Good Faith & Fair Dealing)

89. The above paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

90. It is well-settled in North Carolina that every contract contains an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement.

91. An implied covenant of good faith and fair dealing was included within the Policy.

14

92.     At all relevant times, Defendant and its agents, employees, supervisors, managers, or officers assigned to Plaintiff's 2023 Claim owed Plaintiff a duty to act diligently and deal with Plaintiff fairly and in good faith.

93.     At all times relevant, Defendant and its agents, employees, supervisors, managers, and officers owed an obligation to Plaintiff not to misrepresent pertinent facts or insurance policy provisions concerning the Policy relating to coverage or the availability of coverage for the 2023 Claim.

94.     Defendant breached the implied covenant of good faith and fair dealing it owed to Plaintiff under the Policy by:

   a.  Misrepresenting pertinent facts relating to coverages at issue, specifically misrepresenting the cause of the damage to the Property and condition of the roof by creating its own, unsupported conclusions, passing them off as expert conclusions that were not made by its investigating Expert;

   b.  Misrepresenting insurance policy provisions relating to coverages at issue, specifically misrepresenting the term "Shrinkage" as written in its Policy, defining it differently than it is implied to mean when reading it with the Policy language as a whole;

   c.  Claiming repairs were never made when Defendant never previously indicated to Plaintiff that the Property needed or required any such repairs;

   d.  Not attempting in good faith to effectuate prompt, fair, and equitable settlement of Plaintiff's claim, in which damages have become reasonably clear;

   e.  Refusing to pay Plaintiff's claim for the wind and hail damage to the Property from the 2023 Storm;

f.   Failing to deal fairly with Plaintiff;

g.   Compelling Plaintiff to institute litigation to recover amounts due under the Policy;

h.   Otherwise acting unreasonably, maliciously, unscrupulously, and deceptively;

i.   Otherwise violating Chapter 58 of the North Carolian General Statutes;

j.   Otherwise violating Chapter 75 of the North Carolina General Statutes; and

k.   Otherwise breaching the covenant of good faith and fair dealing to be proven at the trial of this matter.

95.   By breaching the covenant of good faith and fair dealing, Defendant breached its material obligations of the Policy.

96.   Defendant's actions, misrepresentations, and failure to pay Plaintiff's 2023 Claim as described herein were not due to an honest disagreement over the validity of the 2023 Claim or an innocent mistake.

97.   Defendant's actions, misrepresentations, and failure to pay Plaintiff's 2023 Claim as described herein were the result of numerous violations of Chapter 58 and 75 of the North Carolina General Statutes.

98.   Defendant's actions, misrepresentations, and failure to pay Plaintiff's 2023 Claim were the result of its lack of good faith.

99.   Defendant's actions, misrepresentations, and failure to pay Plaintiff's 2023 Claim as described herein constitute a breach of the implied covenant of good faith and fair dealing and deprived Plaintiff of its contracted-for benefits under the Policy.

100.   Defendant damaged Plaintiff when it breached the implied covenant of good faith and fair dealing.

101.    Defendant's breaches of the covenant of good faith and fair dealing as described herein proximately cause Plaintiff to suffer damages in an amount in excess of $25,000.00.

102.    As a result of the aforementioned breaches of the implied covenant of good faith and fair dealing, Plaintiff is entitled to recover from Defendant an amount in excess of $25,000.00.

## SEVENTH CAUSE OF ACTION
### (Constructive Fraud)

103.    The above paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

104.    A relationship of trust and confidence existed between Defendant and Plaintiff.

105.    Plaintiff had a long-standing relationship with Defendant having had insurance policies with it for at least (4) years prior to the 2023 Storm.

106.    Plaintiff placed special confidence in Defendant.

107.    Defendant denied wind and hail damage coverage under the Policy based on misrepresentations of pertinent facts and insurance policy provisions as described herein.

108.    Defendant took advantage of the trust and confidence which Plaintiff had instilled in it, and used said trust and confidence to Plaintiff's detriment, when it:

a.    Sold Plaintiff the Policy which, by contractual terms, provides coverage for wind and hail damage;

b.    Collected a premium for a coverage it did not pay thus selling illusory coverage;

c.    Misrepresented pertinent facts relating to coverages at issue, specifically misrepresented the cause of the damage to the Property and condition of the roof by creating its own, unsupported conclusions, passing them off as expert conclusions that were not made by its investigating Expert;

17

d. Misrepresented insurance policy provisions relating to coverages at issue, specifically misrepresented the term "Shrinkage" as written in its Policy, defining it differently than it is implied to mean when reading it with the Policy language as a whole;

e. Claiming repairs were never made when Defendant never previously indicated to Plaintiff that the Property needed or required any such repairs;

f. Denied wind and hail damage coverage under the Policy; and

g. Otherwise engaged in constructive fraud to be proved at the trial of this matter.

109. Defendant used its position of trust and confidence in the consummation of its constructive fraud, and placed its own interests above Plaintiff's, when it:

a. Sold Plaintiff the Policy which, by contractual terms, provides coverage for wind and hail damage;

b. Collected a premium for a coverage it did not pay thus selling illusory coverage;

c. Misrepresented pertinent facts relating to coverages at issue, specifically misrepresented the cause of the damage to the Property and condition of the roof by creating its own, unsupported conclusions, passing them off as expert conclusions that were not made by its investigating Expert;

d. Misrepresented insurance policy provisions relating to coverages at issue, specifically misrepresented the term "Shrinkage" as written in its Policy, defining it differently than it is implied to mean when reading it with the Policy language as a whole;

e. Claiming repairs were never made when Defendant never previously indicated to Plaintiff that the Property needed or required any such repairs;

18

f.   Denied wind and hail damage coverage under the Policy; and

g.   Otherwise engaged in constructive fraud to be proven at the trial of this matter.

110.   Defendant sought to benefit itself and did benefit as a result of its actions to the detriment and harm of Plaintiff.

111.   Defendant's constructive fraud damaged Plaintiff as set forth herein.

112.   Defendant's constructive fraud described herein proximately cause Plaintiff to suffer damages in an amount in excess of $25,000.00.

113.   As a result of the aforementioned constructive fraud, Plaintiff is entitled to recover from Defendant an amount in excess of $25,000.00.

## EIGHTH CAUSE OF ACTION
### (Fraud)

114.   The above paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

115.   The Policy provides for wind and hail damage coverage to the Property.

116.   By its express terms in the Policy and at all times prior to the 2023 Storm, Defendant represented to Plaintiff that said Policy provided wind and hail damage coverage.

117.   After the 2023 Storm, Plaintiff submitted the 2023 Claim to Defendant for wind and hail damage coverage.

118.   In handling the 2023 Claim, Defendant made false representations of existing facts in the following ways:

a.   Misrepresented pertinent facts relating to coverages at issue, specifically misrepresented the cause of the damage to the Property and condition of the roof

19

by creating its own, unsupported conclusions, passing them off as expert conclusions that were not made by its investigating Expert;

b. Misrepresented insurance policy provisions relating to coverages at issue, specifically misrepresented the term "Shrinkage" as written in its Policy, defining it differently than it is implied to mean when reading it with the Policy language as a whole;

c. Claiming repairs were never made when Defendant never previously indicated to Plaintiff that the Property needed or required any such repairs; and

d. Otherwise misrepresented related information to be proven at the trial in this matter.

119. Defendant's aforementioned false representations were reasonably calculated to deceive Plaintiff in that when Defendant made such representations, knew them to be false, or otherwise made such representations recklessly, without any knowledge of their truths or falsity, as a positive assertion.

120. Defendant's false representations were made with the intent to deceive and with the intent that it be acted upon by Plaintiff in that Plaintiff would not dispute Defendant's denial of its 2020 Claim and now 2023 Claim, resulting in Plaintiff not receiving the coverage it is duly owed pursuant to the Policy.

121. Plaintiff was, in fact, deceived by the false representations made in the 2020 Denial Letter, and acted upon them by not disputing the coverage decision, which is ultimately now affecting its right to coverage under the Policy for the 2023 Claim as the same misrepresentations are being made by Defendant again.

122. Plaintiff's reliance upon the false representations in the 2020 Denial Letter was reasonable because, under the same or similar circumstances, a reasonable person, in the exercise of ordinary care, would have relied on the original false representations made in the 2020 Denial Letter, which is now affecting Plaintiff's right to coverage under the Policy for the 2023 Claim as the same misrepresentations are being made by Defendant again.

123. Defendant's false representations described herein proximately caused Plaintiff to suffer damages in an amount in excess of $25,000.00.

124. As a result of the aforementioned fraud, Plaintiff is entitled to recover from Defendant an amount in excess of $25,000.00.

## NINTH CAUSE OF ACTION
### (Punitive Damages)

125. The above paragraphs of this Complaint are hereby incorporated by reference as if fully set forth herein.

126. As a result of Defendant's conduct described in this Complaint, including Defendant's willful and wanton acts, Plaintiff is entitled to recover punitive damages from Defendant.

127. As a result of Defendant's conduct by and through its officers, directors, or managers who participated in or condoned the conduct constituting the aggravating factors giving rise to punitive damages, Plaintiff is entitled to recover punitive damages from Defendant.

128. Defendant's acts, including the acts of its officers, directors, or managers who participated in or condoned the conduct constituting the aggravating factors giving rise to punitive damages, were a direct and proximate cause of Plaintiff's financial injury claimed herein.

129.    As a result of the aforementioned acts of Defendant, including the acts of its officers, directors, or managers who participated in or condoned the conduct constituting the aggravating factors giving rise to punitive damages, Plaintiff is entitled to recover from Defendant punitive damages in excess of $25,000.00.

**WHEREFORE**, having complained of Defendant, Plaintiff prays this Honorable Court afford it the following relief:

1. That Plaintiff have and recover judgment of Defendant an amount in excess of $25,000.00 for its actual damages for the claims set forth herein;

2. That Plaintiff have and recover, at its election prior to judgment, treble or punitive damages from Defendant, as well as any other compensatory and/or extra-contractual damages permitted by law;

3. That Plaintiff have and recover costs, interest, and attorneys' fees, to the greatest extent permitted under North Carolin law;

4. That Plaintiff have a trial by jury on all issues so triable; and

5. That Plaintiff have such other further relief as the Court deems just and proper.

This the 25 day of February, 2025.

PINTO COATES KYRE & BOWERS, PLLC

Richard L. Pinto
N.C. State Bar No. 9412
Aerin N. Hickey
N.C. State Bar No. 58777
3203 Brassfield Rd.
Greensboro, NC 27410
Telephone: (336) 282-8848
Facsimile: (336) 282-8409

*Attorneys for Plaintiff*

23