IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TRIAD PROPERTY INVESTMENTS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:25-cv- 00243-SDT-JEP |
| OHIO SECURITY INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION & ORDER

THACKER, Circuit Judge (sitting by designation):

This case involves a breach of contract dispute between Triad Property Investments, LLC ("Triad") and Ohio Security Insurance Company ("Ohio Security"). Ohio Security denied two insurance claims that Triad made after storms in 2019 and 2023. Triad contests both of these denials.

Triad filed a nine count Complaint against Ohio Security alleging breach of contract, extra-contractual, tort, and punitive damages claims. In response, Ohio Security filed a motion to dismiss eight of the claims in full for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Ohio Security also moved for partial dismissal of Count II to the extent that it is premised on the 2019 Storm. For the reasons detailed further below, Ohio Security's motion is GRANTED. Counts I and III–IX are dismissed with prejudice. To the extent that Count II is premised on the

1

2019 Storm, Ohio Security's motion is also GRANTED. Thus, the breach of contract claim contained in Count II is limited to recovery for damages that emanate from the 2023 Storm.

## I.

### A.

At the motion to dismiss stage, the court accepts Triad's allegations as true and draws all reasonable inferences in Triad's favor. *Conner v. Cleveland Cnty.*, 22 F.4th 412, 416 (4th Cir. 2022). Although the consideration of materials outside the pleadings typically converts a motion to dismiss into a motion for summary judgment, the court may properly consider extrinsic documents attached to a motion to dismiss without converting it to a motion for summary judgment "so long as they are integral to the complaint and authentic." *Anand v. Ocwen*, 754 F.3d 195, 198 (4th Cir. 2014) (quoting *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). And "in the event of a conflict between the bare allegations in the complaint and any exhibit attached, the exhibit prevails." *Wells v. Fuentes*, 126 F.4th 882, 893 n.10 (4th Cir. 2025) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). Put differently, "if a plaintiff bases his complaint on [an exhibit that] blatantly contradicts [his] allegations, then [the court] will dismiss those allegations as implausible." *Fuentes*, 126 F.4th at 896 (citation and internal quotation marks omitted).

The following facts are taken from Triad's Complaint and exhibits attached to Ohio Security's memorandum in support of its motion to dismiss as well as Triad's memorandum in opposition to the motion to dismiss, which both parties agree are integral and authentic.

2

*See* Def. Mem. in Supp. of Mot. To Dismiss at 2; Pl. Mem. in Opp. of Mot. To Dismiss at 2–4.

1.

<u>2019 Storm and Coverage Dispute</u>

On September 1, 2019, a hailstorm occurred in Greensboro, North Carolina (the "2019 Storm"). It caused damage to Triad's property located at 106 College Road, Greensboro, North Carolina (the "Property"). Specifically disputed here is the damage allegedly caused to the Property's roof, which is made from an ethylene propylene diene monomer ("EPDM") membrane.[1] At the time of the 2019 Storm, the Property was insured by an Ohio Security insurance policy that included hail and wind damage coverage. On February 25, 2020, Triad submitted a claim to Ohio Security (the "2020 Claim") requesting payment for the damage to its Property allegedly caused by the 2019 Storm.

Two days later, on February 27, 2020, Ohio Security conducted an initial inspection of the Property. A Triad representative and Triad's contractor, Melvin Burney, were present for this initial inspection. On March 9, 2020, Ohio Security conducted a second inspection of the Property through a hired engineer, Jeremy Richardson of Donan Engineering, who conducted his additional inspection accompanied by Triad's contractors, "Woodrow Winchester and Melvin Burney," who "were present to point out areas of

---

[1] An EPDM membrane is a synthetic rubber roofing material used in low-slope roofs. *See* ERA EPDM Roofing Association, *What Is EPDM?*, https://perma.cc/6MGB-B4AD (last visited July 30, 2025).

3

concern and to provide firsthand information." Def. Ex. C, ECF No. 8; Pl. Ex. 1, ECF No. 10. *See* Compl. ¶ 9.

Thereafter, Richardson provided an inspection report to Ohio Security, which Ohio Security then provided to Triad (the "2020 Inspection Report"). According to the 2020 Inspection Report, its purpose was "to determine whether hail and/or wind [] damaged the roof membrane." Def. Ex. C at 2; Pl. Ex. 1 at 2. The 2020 Inspection Report details that Richardson: (1) discussed the Property and the storm with Triad's contractors; (2) made observations of the Property and its surrounding area, which the report refers to as "collateral indicators of hail impact" (i.e., metal, wood, windows, HVAC fins, and vents); and (3) considered historical weather data between January 1, 2019, and March 8, 2020. Def. Ex. C at 4; Pl. Ex. 1 at 4. The 2020 Inspection Report further detailed Richardson's own knowledge regarding the type of roof at issue (i.e., "EPDM Roof Membranes" on a "low-slope roof") as well as how hail and wind impact that type of roof. Def. Ex. C at 5–7; Pl. Ex. 1 at 5–7. Namely, Richardson opined that wind "most commonly" causes "sections of the roof [to be] lifted, bent, and/or peeled back," which "leads to cascading failure of the roofing system where the covering is peeled back" and that hail creates "circular," "semi-circular," or "elliptical" marks or tears that may be accompanied "with a pattern of 'spider web' cracking." Def. Ex. C at 4; Pl. Ex. 1 at 4.

Finally, the 2020 Inspection Report details "EPDM Shrinkage," which is a type of damage to roofs with EPDM membranes unrelated to hail and wind damage. The 2020 Inspection Report states, "[a]s the EPDM membrane ages, the oils within the membrane degrade and volatilize as a result of exposure to heat and ultraviolet (UV) rays. The loss

4

of oils within the membrane causes a resultant loss of mass and volume. As the EPDM loses volume, it begins to shrink," which causes the "flashing membrane to pull away from the parapet walls"[2] or "tenting." Def. Ex. C at 5–6; Pl. Ex. 1 at 5–6.

In a section titled "Summary of Conclusions," the 2020 Inspection Report concluded:

> -Based on the study of the collateral indicators, hail up to 3/4 inch in diameter fell at this site.
> -Hail smaller than [two] inches in diameter lacks sufficient mass and or velocity to damage unballasted EPDM membranes.
> -This roof is not damaged by hail impacts or wind uplift.
> -The tented/wrinkled EPDM material is attributable to shrinkage and the installation of the material.
> -The two tears in the EPDM roof membrane are man-made and are not consistent with hail impact.
> -The tears depicted in the provided photographs are man-made and are not consistent with hail impact.

Def. Ex. C at 7–8; Pl. Ex. 1 at 7–8; Compl. ¶ 11.

On March 20, 2020, Ohio Security denied coverage of Triad's 2020 Claim related to the 2019 Storm damage to the Property, relying on the 2020 Inspection Report (the "2020 Denial Letter"). Specifically, Ohio Security stated:

> In reviewing the policy language above, damages that are a result of wear and tear, deterioration, shrinking and maintenance/workmanship-related issues are excluded under your policy. Additionally, water entered the building through the openings from the improperly installed membrane around the parapet wall. As referenced in the policy language above, damages to the interior of a building from rain water are not covered unless the building or structure first sustains damage by a covered cause of loss to its roof or walls through which

---

[2] A parapet wall is "a low wall or railing to protect the edge of a . . . roof." *Parapet*, Merriam-Webster.com, https://perma.cc/F4QH-WGYS (last visited July 30, 2025).

the rain, snow, sleet, or ice enters. Also, leaks that repeat for a
period of 14 days or more are not covered.

Compl. ¶ 18; Def. Ex. B at 4 ("2020 Denial Letter"); Pl. Ex. 2 at 4.

2.

2023 Storm and Coverage Dispute

On March 26, 2023, Triad entered into a new insurance contract with Ohio Security

to provide coverage, including for wind and hail, for the Property. *See* Pl. Ex. 3, ECF No.

10 ("Policy"). On August 15, 2023, another hailstorm occurred (the "2023 Storm").

According to Triad, the Property's roof sustained "significant water leaks" as a result of

the 2023 Storm. Compl. ¶ 30.

On December 6, 2023, Triad submitted a claim to Ohio Security (the "2023 Claim"),

requesting payment for the damages to its Property pursuant to the Policy. Ohio Security

used Richardson, the same engineer that had inspected the Property in 2019, to once again

inspect the Property on December 19, 2023. Richardson prepared an inspection report

detailing his conclusions regarding the cause of damage to the Property. (the "2023

Inspection Report"). Ohio Security denied coverage (the "2023 Denial Letter"). In the

2023 Denial Letter, Ohio Security quoted from the 2023 Inspection Report, which listed a

number of issues that Richardson identified, including "the same faulty and inadequate in

station [sic] [that was] observed" when he "previously inspected" the building. Ohio

Security further stated:

> The inspection found no repairs were made to the faulty and
> inadequate workmanship of the installation of the EPDM that
> were observed during our inspection in February 2019. In
> reviewing the policy language above, damages that are the

6

> result of wear and tear, deterioration, faulty, inadequate design, shrinking and maintenance/workmanship-related issues are excluded under your policy. Additionally, water entered the building through the openings from the improperly installed membrane around the parapet wall.

Compl. ¶ 33.

## B.

On February 25, 2025, Triad filed the present lawsuit against Ohio Security in the Superior Court of Guilford County, North Carolina. Triad's Complaint alleges nine claims for relief: (1) Negligent Misrepresentation (Count I); (2) Breach of Contract (Count II); (3) Violation of Chapter 58 – Obligation of Good Faith and Fair Dealing (Count III); (4) Unfair or Deceptive Trade Practices – Chapter 75 (Count IV); (5) Bad Faith (Count V); (6) Breach of Covenant of Good Faith and Fair Dealing (Count VI); (7) Constructive Fraud (Count VII); (8) Fraud (Count VIII); and (9) Punitive Damages (Count IX). In its Prayer for Relief, Triad's Complaint alleges that Triad seeks actual damages for repair of the Property "in excess of $25,000," treble or punitive damages, and attorney's fees. Compl. ¶ 129. Ohio Security accepted service of the Complaint on February 26, 2025, and timely filed a notice of removal to this court on March 27, 2025, which alleges complete diversity of citizenship and an amount in controversy exceeding $75,000.

On April 3, 2025, Ohio Security filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) as well as a memorandum in support of the motion. Def. Mot. to Dismiss, ECF No. 7; Def. Mem. in Supp. of Mot. To Dismiss, ECF No. 8. The motion seeks to dismiss Counts I and III–IX of the Complaint. The motion

also seeks to dismiss that portion of Count II that relates to the 2019 Storm.[3] Ohio Security argues that the claims premised upon the 2019 Storm are time barred, the extra-contractual claims premised upon the 2023 Storm fail to state a claim upon which relief can be granted, and the economic loss doctrine applies to bar the tort claims. Ohio Security further argues that, if the court dismisses the other claims, the punitive damages claim should be dismissed because punitive damage claims are not permitted in North Carolina for breach of contract, and the only remaining claim would be the breach of contract claim premised upon the 2023 Storm.

On April 24, 2024, Triad opposed the motion, arguing that it had included conduct relevant to the 2019 Storm in the complaint only "to demonstrate and support its [claims] as they relate to the 2023 Storm damages," and, therefore, Triad did not seek damages related to the 2019 Storm. Pl. Mem. in Opp. of Mot. To Dismiss, ECF No. 10, at 8. Triad further argues that the motion to dismiss should be denied because the extra-contractual

_____

[3] Ohio Security has not yet filed an answer to the Complaint. The court notes that "the filing a motion to dismiss less than all of the claims in a complaint suspends the time to respond to the entire complaint as contemplated in Rule 12(a)." *Just. v. Dimon*, No. 3:10-cv-413, 2011 WL 2183146, at *2 (W.D.N.C. June 6, 2011) (citing Fed. R. Civ. P. 12 (a)). Therefore, Ohio Security has 14 days after the notice of the court's ruling on this Rule 12(b)(6) motion to answer the remainder of the Complaint. Fed. R. Civ. P. 12 (a)(4) ("Unless the court sets a different time . . . the responsive pleading must be served within 14 days after notice of the court's action[.]"). *See also Jacobson v. Allstate Ins. Co.*, No. cv-06-1629, 2006 WL 8456604, at *2 (D. Md. Oct. 17, 2006) (construing Rule 12(a)(4) to provide that service of a Rule 12(b) motion that addresses only part of a complaint suspends the time to respond to the entire complaint); *Godlewski v. Affiliated Computer Servs., Inc.,* No. 3:02-cv-544, 210 F.R.D. 571, 572 (E.D. Va. 2002) (stating that "it is best to stall the proceedings on all counts until after the court rules on the Rule 12(b)(6) motion"); *Doshi v. Blinken*, No. cv-23-3613, 2024 WL 3509486, at *10 (D.D.C. July 22, 2024) (stating that the defendant's time to respond to the remaining claims was governed by Rule 12(a)(4)).

claims are properly pled and the economic loss doctrine does not bar the tort claims because the claims can be pled in the alternative. Finally, Triad contends that the punitive damages claim should not be dismissed because the tort claims should not be dismissed. The motion became ripe on May 8, 2025, after Ohio Security filed a reply in support of the motion to dismiss. Def. Reply in Supp. of Mot. to Dismiss, ECF No. 12.

II.

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, Triad "must provide sufficient detail to show that [it] has a more-than-conceivable chance of success on the merits." *Decoster v. Becerra*, 119 F.4th 332, 337 (4th Cir. 2024) (citation omitted). Determining plausibility is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Legal conclusions or conclusory statements do not suffice. *Id.* at 678. Nor are a complaint's allegations plausible "if a plaintiff bases his complaint on [an exhibit] that 'blatantly

9

contradicts' [his] allegations." *Wells v. Fuentes*, 126 F.4th 882, 896 (4th Cir. 2025) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (cleaned up)).

And, Federal Rule of Civil Procedure 9(b) requires parties alleging fraud to "state with particularity the circumstances constituting the fraud[.]" Fed. R. Civ. P. 9(b).  To meet this standard, the complaint must describe "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation . . . ." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008).

Because jurisdiction here rests on diversity of citizenship, 28 U.S.C. § 1332, this court applies North Carolina substantive law and federal procedural law.  *See Skyline Restoration, Inc. v. Church Mut. Ins. Co.*, 20 F.4th 825, 829 (4th Cir. 2021) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79–80 (1938)).

III.

A.

Breach of Contract (Count II)

The court first considers whether the statute of limitations for breach of contract claims requires partial dismissal of Count II.

A motion to dismiss pursuant to Rule 12(b)(6) "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc).  But a district court may reach the merits of an affirmative defense "if all facts necessary to the affirmative defense clearly appear on the face of the complaint," *id.* (emphasis and alteration omitted),

10

including where it is plain from the "complaint . . . that the statute of limitations has run on the claim," *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996) (internal quotation marks omitted). "'[S]tatutes of limitations are inflexible and unyielding and operate without regard to the merits of a cause of action.'" *King by & through Small v. Albemarle Hosp. Auth.*, 809 S.E.2d 847, 849 (N.C. 2018) (citing *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 802 S.E.2d 888, 891–92 (N.C. 2017)).

North Carolina General Statute section 1-52 contains a list of causes of action that are subject to a three-year statute of limitations, which includes breaches of contract. *See* N.C. Gen. Stat. § 1-52(1) ("Upon a contract, obligation or liability arising out of a contract, express or implied . . . ."). "Generally, under [North Carolina] case law, a breach of contract claim accrues on the date of breach." *Skyline Restoration, Inc. v. Church Mut. Ins. Co.*, 20 F.4th 825, 830 (4th Cir. 2021) (citing *Christenbury Eye Ctr., P.A.*, 802 S.E.2d at 892 ("A cause of action is complete and the statute of limitations begins to run upon the inception of the loss from the contract, generally the date the promise is broken.")). However, in *Skyline Restoration, Inc. v. Church Mutual Insurance Company*, the Fourth Circuit Court of Appeals acknowledged that North Carolina courts have "held that claims for loss covered by homeowner's insurance and commercial property insurance are subject to the three-year limitation in [section] 58-44-16," wherein the statute of limitations begins to run as of the *date of loss* rather than the *date of breach*. 20 F.4th at 830 n.4 (citing N.C. Gen. Stat. § 58-44-16(18) ("No suit or action on this policy for the recovery of *any claim* shall be sustainable in any court of law . . . unless commenced within three years after inception of the loss.")).

11

Ohio Security asserts that Triad impermissibly seeks to circumvent the three year statute of limitations applicable to the 2019 contract dispute because Count II, which is ostensibly premised on and refers to the claim arising from the 2023 Storm, "incorporates paragraphs 1–52 of the Complaint and alleges that [Ohio Security] is liable for '*breaches*,' *plural*, when alleging entitlement to relief in paragraph 62."  Def. Mem. in Supp. of Mot. To Dismiss, ECF No. 8, at 7 n.4 (emphases supplied).

Here, to the extent that the breach of contract claim contained in Count II of the complaint is premised on the 2019 Storm, the date of loss was the date of the 2019 Storm on September 1, 2019.  Thus, the statute of limitations expired on September 1, 2022.  Yet, Triad did not file its complaint until well over five years after the date of loss -- on February 25, 2025.  *See generally* ECF No. 2.  Therefore, to the extent the breach of contract claim contained in Count II is premised on and seeks recovery for the conduct of Ohio Security relative to the 2019 Storm, it is time barred by the three year contract dispute statute of limitations.  *See* N.C. Gen. Stat. § 1-52(1); N.C. Gen. Stat. § 58-44-16(18).  Thus, the breach of contract claim contained in Count II is limited to recovery for damages that emanate from the 2023 Storm.

B.

Unfair and Deceptive Trade Practices (Counts III and IV)

Next, the court considers whether to dismiss Counts III and IV of the Complaint for failure to state a claim.  Count III alleges a violation of the obligation of good faith and fair dealing.  Count IV alleges that Ohio Security engaged in unfair and deceptive trade practices.

12

1.

<u>Applicable Law</u>

North Carolina General Statute section 75-1.1 "prohibits unfair and deceptive acts or practices" and section 58-63-15(11) "defines unfair practices in the settlement of insurance claims." *Gray v. N. Carolina Ins. Underwriting Ass'n*, 529 S.E.2d 676, 678 (N.C. 2000) (citations omitted). *See, e.g,* N.C. Gen. Stat. § 58-63-15(11)(d) ("Refusing to pay claims without conducting a reasonable investigation based upon all available information . . . "); N.C. Gen. Stat. § 58-63-15(11)(f) ("Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear . . . "); N.C. Gen. Stat. § 58-63-15(11)(g) ("Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured . . . "). North Carolina General Statute "[section] 75-1.1 provides a private cause of action for violations, whereas [section] 58-63-15(11) does not; instead 'the remedy for a violation of section 58-63-15 is the filing of a section 75-1.1 claim.'" *Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 396 (4th Cir. 2018) (quoting *Country Club of Johnston Cty., Inc. v. U.S. Fid. & Guar. Co.*, 563 S.E.2d 269, 278 (N.C. Ct. App. 2002)) (internal quotation marks omitted). "Thus, an individual may file an independent [section] 75-1.1 claim or may file a [section] 75-1.1 claim that relies on a violation of [section] 58-63-15(11)." *Id.* (citing *Gray*, 529 S.E.2d at 684). "C]onduct that violates [section] 58-63-15(11) constitutes a violation of [section 75-1.1] as a matter of law." *Id.* (citing *Gray*, 529 S.E.2d at 684). The

13

court considers Count III as a section 75-1.1 claim that relies on a violation of section 58-63-15(11).

To support an UDTPA claim pursuant to section 75-1.1, a plaintiff must allege "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiff[ ]." *Gray*, 529 S.E.2d at 681 (citing N.C. Gen. Stat. § 75–1.1(a)).

"North Carolina law does not permit a party to transmute a breach of contract claim into a . . . UDTPA claim[.]" *Waterford I at Cary Park Condo. Homeowners Ass'n, Inc. v. Nationwide Prop. & Cas. Ins. Co.*, 669 F. Supp. 3d 531, 536 (E.D.N.C. 2023) (citation and internal quotation marks omitted). However, where "substantial aggravating circumstances accompany a breach of contract, then *those circumstances* can create a UDTPA claim." *Id.* (emphasis supplied) (first citing *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 535 (4th Cir. 1989); then citing *United Roasters, Inc. v. Colgate-Palmolive Co.*, 649 F.2d 985, 992 (4th Cir. 1981); and then citing *Burrell v. Sparkkles Reconstruction Co.*, 657 S.E.2d 712, 717 (N.C. Ct. App. 2008)). "[S]ubstantial aggravating circumstances include some element of deception, such as forged documents, lies, or fraudulent inducements." *Stack v. Abbott Labs., Inc.*, 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013) ("[A] mere breach of contract cannot sustain a UDTPA claim without a showing of substantial aggravating circumstances. . . . [So, w]here the only acts alleged are themselves a breach of the contract between the parties, they will not support a UDTPA claim."). And this court has previously recognized that the Fourth Circuit has cautioned against "allowing a boilerplate UDTPA claim to ride piggyback on a contract action." *Id.* at 668–69 (citing

14

*Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (concluding, "[g]iven the contractual center of th[e] dispute, plaintiffs' [UDTPA] claims [were] out of place")).

2.

Allegations

Triad alleges that Ohio Security committed unfair and deceptive trade practices through three allegations relating to the denial of coverage by Ohio Security. In addition, Triad alleges that Ohio Security committed various unfair claim settlement practices.

a.

Allegations Premised on the Coverage Dispute

i.

The Passed Off Allegation

Triad alleges that when Ohio Security denied coverage for the 2019 Storm in the 2020 Denial Letter, it "misrepresented the cause of damage to the Property and condition of the roof by creating its own, unsupported conclusions," and passed them off as the conclusions of the engineer who inspected the property -- even though those conclusions are not found in the engineer's 2020 Inspection Report (the "Passed Off" Allegation). Compl. ¶ 35. *See, e.g.*, *id.* at ¶ 66.a., 73, 85.c., 94.a.

The 2020 Inspection Report concluded that the roof membrane was not damaged by hail or wind, "[t]he tented/wrinkled EPDM material is attributable to shrinkage and the installation of the material. . . . The tears [in the EPDM roof membrane] depicted in the provided photographs are man-made and are not consistent with hail impact." Def. Ex. C

15

at 7–8; Pl. Ex. 1 at 7–8; Compl. ¶ 11.  In its 2020 Denial Letter, Ohio Security relied on the 2020 Inspection Report before denying coverage of Triad's 2020 Claim related to the 2019 Storm damage to the Property based upon wear and tear, deterioration, maintenance/workmanship-related issues, and the "improperly installed membrane around the parapet wall" that Ohio Security stated were excluded under Triad's policy.  Compl. ¶ 18; Def. Ex. B at 4; Pl. Ex. 2 at 4.

Triad alleges that other than "shrinkage," the reasons Ohio Security denied coverage, including wear and tear, deterioration, and maintenance/workmanship-related issues are not mentioned in the 2020 Inspection Report and that "[a]t no point in the 2020 [Inspection] Report did [Richardson] note any wear and tear, deterioration, or maintenance/workmanship-related issues with the Property's roof . . . [or] conclude that the EPDM membrane was improperly installed."  Compl. ¶¶ 13–14, 19.

Then, Triad alleges that when Ohio Security denied coverage for the 2023 Storm, Ohio Security "relied on the same conclusions made in its 2020 [D]enial [L]etter in support for its . . . reasons for denying coverage for the 2023 Claim."  Compl. ¶ 35.  Ohio Security relied on the 2023 Inspection Report by Richardson, the same engineer that wrote the 2020 Inspection Report.  In the 2023 Inspection Report, Richardson noted the same "faulty and inadequate" installation of the EPDM that he had observed during his inspection in February 2019, which included wear and tear, deterioration, faulty, inadequate design, shrinking, maintenance/workmanship-related issues, and the improperly installed membrane around the parapet wall.  *Id.* at ¶ 33.  Therefore, Triad alleges that Ohio Security again misrepresented the cause of damage to the Property and condition of the roof by

16

creating its own, unsupported conclusions regarding the cause of damage to the Property. Triad alleges that, when Ohio Security denied coverage for the 2023 Storm, it again passed off these unsupported conclusions as the conclusions of the engineer. *Id.* at ¶ 35.

ii.

The Shrinkage Allegation

Triad alleges that Ohio Security's denials regarding the 2023 Storm misrepresented the definition of "shrinkage" contained in Ohio Security's policy. Specifically, Triad contends that the meaning of "shrinkage" in the policy is vague because it "is used to discuss the structural integrity of the building as a whole" rather than "the shrinking of a roof membrane atop the building." Compl. ¶ 20. Triad therefore contends that "shrinkage" does not mean the same thing as it means in the 2020 Denial Letter. *Id.* at 21. Therefore, Triad alleges that "shrinkage" could not form the basis of the denial in 2023 (the "Shrinkage" Allegation). *See, e.g.*, *id.* at ¶¶ 22, 38–42, 66.b, 73, 85.d, 94.b.

iii.

The No Repairs Allegation

Finally, Triad alleges that Ohio Security denied coverage for the 2023 Storm, in part, because Triad failed to repair the Property after the 2019 Storm. Yet, according to Triad, Ohio Security never "mention[ed] or indicate[d] to Triad that the Property needed or required repairs" after the 2019 Storm (the "No Repairs" Allegation). *See, e.g.*, Compl. ¶¶ 34, 66.c, 73, 85.e, 94.c.

17

b.

<u>Unfair Claim Settlement Practices Allegations</u>

In addition to the allegations above relating to how Ohio Security handled the coverage dispute, Triad alleges that Ohio Security committed various unfair claim settlement practices that violated section 58-63-15(11), and, in so doing, violated section 75-1.1 as a matter of law. Specifically, Triad alleges Ohio Security violated section 58-63-15(11) by "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlement of [Triad]'s 2023 Claim, in which damages have become reasonably clear," "[r]efusing to pay [Triad]'s 2023 Claim for the wind and hail damage to the Property from the 2023 Storm," and "[c]ompelling [Triad] to institute litigation to recover amounts due under the Policy." Compl. ¶ 66.d.–f.

3.

<u>Application of Law to the Complaint</u>

a.

<u>The Passed Off Allegation</u>

First, regarding the Passed Off Allegation, Ohio Security highlights that it pertains exclusively to Ohio Security's handling of the 2019 Storm and argues that the allegation is, therefore, time barred because it was not filed within the three year period allowed by the suit limitations provision in the contract. Consequently, Ohio Security argues that such time barred conduct cannot form the factual basis for Counts III–IV.

Suit limitation provisions in insurance contracts apply to extra-contractual claims arising out of the breach of contract claim. *See Bankaitis v. Allstate Ins. Co.*, 229 F. Supp.

18

3d 381, 386 (M.D.N.C. 2017) (applying an insurance contract's suit limitation provision to the extra-contractual claim arising out of the breach of contract claim); *Bald Head Island Ltd., LLC v. Ironshore Specialty Ins. Co.*, 609 F. Supp. 3d 393, 399 (E.D.N.C. 2022) (same).

Here, the suit limitation provision in the insurance policy provides that suits must be brought within three years. *See* Def. Ex. A, ECF No. 8 ("Triad Policy"), at 94. The Complaint states that "in writing its 2020 Denial Letter," Ohio Security passed off its own conclusions as the engineer's conclusions, which are not found in the engineer's conclusions in the 2020 Inspection Report. Compl. ¶ 23. The Complaint further alleges that Ohio Security "relied on the same conclusions made in its 2020 Denial Letter in support for its current reasons for denying coverage for the 2023 Claim." *Id.* at ¶ 35. The Passed Off Allegation is plainly time barred because the Complaint is clear that it relates exclusively to Ohio Security's handling of the coverage based on the 2019 Storm and subsequent denial of coverage. Therefore, the Passed Off Allegation is not a valid basis for Triad to recover for Counts III–IV regarding the 2023 Storm.

Nevertheless, alternatively on the merits, the court can consider both the 2020 Denial Letter and the 2020 Inspection Report because the parties agree that they are "integral and authentic." *Anand v. Ocwen*, 754 F.3d 195, 198 (4th Cir. 2014). *See also Wells v. Fuentes*, 126 F.4th 882, 893 n.10 (4th Cir. 2025); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (explaining pursuant to the exhibit-prevails rule that "if a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim") (citation and internal quotation marks omitted) (citing *Fayetteville Investors v. Commercial*

*Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). *See* Def. Mem. in Supp. of Mot. To Dismiss at 2; Pl. Mem. in Opp. of Mot. To Dismiss at 2–4.

Here, both the 2020 Inspection Report and the 2020 Denial Letter negate Triad's bare allegations that Ohio Security misrepresented the cause of damage to the roof by passing off the engineer's conclusions as Ohio Security's own conclusions. Specifically, the 2020 Denial Letter explains that Ohio Security conducted an initial inspection separate from Richardson, who Ohio Security later hired to inspect the Property, Def. Ex. B at 1, and outlined Ohio Security's coverage position in an "Application of the Policy" section separate from the section containing a summary of the engineer's conclusions. *See generally* Def. Ex. B at 1–2. And, in further contrast to Triad's bare allegations, the 2020 Denial Letter does not state that Ohio Security reached its conclusions solely based upon the engineer's 2020 Inspection Report. In fact, there is no apparent conflict between the 2020 Inspection Report and the 2020 Denial Letter. *Compare* Def. Ex. C (2020 Inspection Report), at 6–8 (explaining why an inadequately secured EPDM membrane shrinks and opining that the Property's EPDM membrane exhibited such "shrinkage" due to its "inadequate" installation) *with* Def. Ex. B at 4 (referring to the workmanship-related issues, shrinking, and the improperly installed membrane). The 2020 Denial Letter merely restates, albeit in different terms, the same observations and conclusions of the 2020 Inspection Report. Therefore, the 2020 Inspection Report and the 2020 Denial Letter undercut Triad's allegation that Ohio Security misrepresented the cause of damage to the roof by passing off the engineer's conclusions as Ohio Security's own conclusions. Thus, because the Passed Off Allegation is based upon exhibits that contradict the Complaint, it

20

is implausible. *See Fuentes*, 126 F.4th at 896. Because the Passed Off Allegation is implausible, we need not accept it as true. Therefore, the allegation cannot support Counts III–IV.

Because the Passed Off Allegation is time barred or, in the alternative, implausible, it cannot support Counts III–IV.

b.

The Shrinkage Allegation

Regarding the Shrinkage Allegation, Ohio Security argues that Triad may not "convert a contract interpretation issue into a basis for extra-contractual liability" through conclusory allegations that Ohio Security's coverage position is a misrepresentation of the Policy's definition of "shrinkage." Def. Mem. in Supp. of Mot. to Dismiss at 12 (citing Compl. ¶¶ 66.b, 73, 79, 85.d, 94.b). Triad responds that the motion to dismiss should be denied as to Counts III–IV because it has alleged facts sufficient to satisfy the first element of its UDTPA claim.

Here, Ohio Security is correct that the Shrinkage Allegation reflects a mere contract dispute which cannot support an UDTPA claim premised upon the 2023 Storm. As explained in *Broussard v. Meineke Disc. Muffler Shops, Inc.*, in North Carolina, UDTPA claims all require a showing of something more than mere breach of contract disputes. *See* 155 F.3d at 347 ("Courts . . . relegate claims regarding . . . the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law."); *Ellis v. Louisiana–Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012) ("Egregious or aggravating circumstances must be alleged before the provisions of the [UDTPA] may take effect.")

21

(citation omitted); *Waterford I at Cary Park Condo. Homeowners Ass'n, Inc.*, 669 F. Supp. 3d at 537 (explaining that claims "indistinguishable from the underlying breach of contract . . . cannot by themselves support a UDTPA claim").

Here, the Shrinkage Allegation constitutes a mere contract dispute because it is a dispute regarding the meaning of the term "shrinkage" in relation to the insurance policy - - i.e., whether the definition of the term contained in the insurance policy supported the decision of Ohio Security to deny coverage. Consequently, the Shrinkage Allegation is not the type of egregious or aggravating circumstances cognizable pursuant to the UDTPA. *Ellis*, 99 F.3d at 787. This court declines to allow Triad to "transmute" its breach of contract claim into an UDTPA claim, *Waterford I at Cary Park Condo. Homeowners Ass'n, Inc.*, 669 F. Supp. 3d at 536, because Triad has failed to plausibly allege any "substantial aggravating circumstances" accompanying the alleged contract dispute sufficient to support an UDTPA claim.[4] *See generally Bartolomeo*, 889 F.2d at 535; *United Roasters, Inc.*, 649 F.2d at 992. Because the "only acts alleged are themselves a breach of the contract between the parties, they will not support a UDTPA claim." *Stack*, 979 F. Supp. 2d at 668;

---

[4] The court notes that the particularity requirements of Federal Rule of Civil Procedure 9(b) also apply to UDTPA claims. *See Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 731 (M.D.N.C. 2015) (applying Rule 9(b) to a section 75-1.1 claim alleging fraudulent misrepresentation); *see also Packrite, LLC v. Graphic Packaging Int'l, LLC*, No. 1:17CV1019, 2020 WL 7060395, at *7 (M.D.N.C. Dec. 2, 2020) (applying Rule 9(b) to a section 75-1.1 claim alleging fraudulent omission). Procedurally, a failure to comply with Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6). *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999). Triad has failed to allege even a plausible UDTPA claim because the acts alleged, which are devoid of any aggravating circumstances, cannot support an UDTPA claim. Because Triad has failed to meet the plausibility standard, we note that Triad has also failed to meet the more rigorous particularity requirements of Federal Rule of Civil Procedure 9(b).

*Broussard*, 155 F.3d at 347 (concluding given the "contractual center" of the dispute, that plaintiffs' UDTPA claims were "out of place"). Nor will the mere breach of contract allegation support the UDTPA claim. *See Ellis*, 699 F.3d at 787 (quoting *Wachovia Bank & Trust Co. v. Carrington Dev. Assocs.*, 459 S.E.2d 17, 21 (N.C. Ct. App. 1995)) ("North Carolina has held that a 'breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain' a UDTPA claim.").

As a result, the Shrinkage Allegation represents a contractual dispute that cannot support Counts III–IV.

c.

The No Repairs Allegation

Finally, Ohio Security argues that the No Repairs Allegation is time barred because it "depends on [a] purported omission in the 2020 Denial Letter." Def. Mem. in Supp. of Mot. to Dismiss at 13. Regardless of the untimeliness alleged, Ohio Security argues both that the allegation is an "unwarranted inference" and that Triad's own allegations in the complaint contradict the No Repairs Allegation such that it fails to state a claim upon which relief can be granted. *Id.* Specifically, Ohio Security highlights that Triad's complaint states that 2020 Denial Letter represented to Triad that "water entered the building through the opening from the improperly installed membrane around the parapet wall." *Id.* (citing Compl. ¶ 18). Ohio Security notes, "[c]learly, the 2020 Denial Letter did not represent that the Property was in good condition or otherwise free from defect" because a number of other issues were identified with the roof, including the tenting and wrinkling of the EPDM material and that two angular marks were present. *Id.* (citing Def. Ex. B).

23

Here, to the extent the No Repairs Allegation is premised on the 2020 denial of the 2019 Storm coverage, the allegation is also time barred because the allegation was not brought within three years, as required by the three year suit limitation provision in the policy described above.

Alternatively, on the merits, the No Repairs Allegation is implausible because it constitutes an unwarranted inference. Triad claims that Ohio Security "never previously indicated . . . that the Property needed repairs," but it was clearly aware that repairs needed to be made based on both the 2020 Inspection Report and the 2020 Denial Letter, which both identified various issues with the roof. Further, Triad's Complaint makes clear that it was, in fact, aware from the 2020 Denial Letter that "water entered the building through the opening from the improperly installed membrane around the parapet wall." Compl. ¶ 18.

What is more, Triad's claim that Ohio Security failed to inform it that repairs were needed is at odds with the facts. The 2020 Denial Letter was responding to Triad's own request for insurance coverage to repair the claimed storm damage. As a result, Triad clearly knew that the roof was damaged. Moreover, Triad also knew about the wrinkling, tenting, angular punctures, and improperly installed membrane around the parapet wall from the 2020 Inspection Report, *see* Def. Ex. C, at 7–8, 15, 17; Pl. Ex. 1, at 7–8, 15, 17 (noting the "[t]he tented/wrinkled EPDM material is attributable to shrinkage and the installation of the material" and that there were "two tears in the EPDM membrane"), as well as from the 2020 Denial letter, *see* Def. Ex. B, at 2,4; Pl. Ex. 2 at 2,4 (noting the "tented/wrinkled EPDM material," "two tears," and the "improperly installed membrane"

24

through which water entered the building).  Therefore, the No Repairs Allegation is implausible.

As a result, the No Repairs Allegation cannot support Counts III–VI.

d.

<u>Unfair Claim Settlement Practices Allegations</u>

Ohio Security further argues that the unfair claim settlement practice allegations are "mere legal conclusions and bare assertions devoid of further factual enhancement" that cannot support Counts III–IV.  Def. Mem. in Supp. of Mot. to Dismiss at 14.  Triad responds that the unfair claim settlement practice allegations "constitute an [unfair or deceptive trade practice] as a matter of law."  Pl. Resp. at 10.

Here, Triad has alleged that Defendant violated section 75-1.1 by violating subsections (d), (f), and (g) of section 58-63-15(11).  Yet, these allegations are only formulaic recitations of the elements of the cause of action.  *Compare e.g.*, Compl. ¶¶ 66.e ("Refusing to pay [Triad]'s 2023 Claim for the wind and hail damage to the Property from the 2023 Storm . . . ") *with* N.C. Gen. Stat. § 58-63-15(11)(d) ("Refusing to pay claims without conducting a reasonable investigation based upon all available information . . . "); Compl. ¶¶ 66.d ("Not attempting in good faith to effectuate prompt, fair, and equitable settlement of Plaintiff's . . . Claim, in which damages have become reasonably clear . . . "); *with* N.C. Gen. Stat. § 58-63-15(11)(f) ("Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear . . . "); and Compl. ¶¶ 66.f ("Compelling [Triad] to institute litigation to recover amounts due under the Policy . . . ") *with* N.C. Gen. Stat. § 58-63-15(11)(g) ("Compelling

25

[the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured . . . ").  Although a violation of section 58-63-15(11) violates the UDTPA as a matter of law, merely invoking a subsection of section 58-63-15(11) does not suffice to survive a motion to dismiss.  Triad failed to allege any factual basis for how Ohio Security violated § 58-63-15(11).  Instead, it merely parrots the statutory language.  These conclusory and formulaic recitations do not plausibly allege any violation of § 58-63-15(11).  Therefore, these conclusory allegations likewise cannot support Counts III–IV.

Triad has failed to plead sufficient facts to state plausible claims for unfair and deceptive trade practices.  Accordingly, Counts III–IV are dismissed for failure to state a claim upon which relief can be granted.

### C.

#### Bad Faith Refusal to Settle (Count V) and Breach of the Covenant of Good Faith and Fair Dealing (Count VI)

The court next considers whether to dismiss Counts V–VI for failure to state a claim upon which relief may be granted.  Count V alleges bad faith refusal to settle.  Count VI alleges that Ohio Security breached the covenant of good faith and fair dealing.

#### 1.

#### Applicable Law

"In the insurance context, a claim for breach of the covenant of good faith and fair dealing requires three elements: (1) a refusal to pay after recognition of a valid claim; (2) bad faith; and (3) aggravating or outrageous conduct." *Michael Borovsky Goldsmith LLC*

26

*v. Jewelers Mut. Ins. Co.*, 359 F. Supp. 3d 306, 314 (E.D.N.C. 2019) (citation and internal quotation marks omitted). "Legitimate and honest disagreement over the scope of coverage under an insurance contract does not amount to bad faith." *Michael Borovsky Goldsmith LLC*, 359 F. Supp. 3d at 314. "Aggravated conduct includes 'fraud, malice, gross negligence, [and] insult' as well as actions denying coverage 'willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights.'" *Id.* (quoting *Universal Underwriters Ins. Co. v. Lallier*, 334 F. Supp. 3d 723, 736 (E.D.N.C. 2018)).

The elements of bad faith refusal to settle in North Carolina are "the same as those for breach of the covenant of good faith and fair dealing." *Michael Borovsky Goldsmith LLC*, 359 F. Supp. 3d at 315 (first citing *Defeat the Beat Inc. v. Underwriters at Lloyd's London*, 669 S.E.2d 48, 55 (N.C. Ct. App. 2008); and then citing *Lovell v. Nationwide Mut. Ins. Co.*, 424 S.E.2d 181, 184 (N.C. Ct. App. 1993)).

### 2.

### Factual Allegations

The factual allegations underlying Counts V and VI are the same allegations as outlined in Part III.B.2. – the three allegations premised on the coverage dispute as well as allegations that Ohio Security committed various unfair claim settlement practices.

### 3.

### Application of Law to the Complaint

As explained above, the Passed Off and the No Repairs Allegations are implausible. Therefore, they cannot support Counts V and VI.

27

Regarding the Shrinkage Allegation, Ohio Security argues that it reflects a mere contract dispute that cannot support claims for breach of the covenant of good faith and fair dealing and bad faith refusal to settle. Triad makes no more than a conclusory argument that Ohio Security's motion to dismiss should be denied. Triad merely asserts that it "properly plead its Fifth and Sixth Causes of Action," without more. Pl. Resp. at 12.

Here, Ohio Security is correct that the Shrinkage Allegation reflects a contract dispute which cannot support claims for breach of the covenant of good faith and fair dealing and bad faith refusal to settle. The parties' legitimate disagreement regarding the application of the contract's provisions does not evidence aggravated conduct or rise to bad faith. *Michael Borovsky Goldsmith*, 359 F. Supp. 3d at 314 ("Legitimate and honest disagreement over the scope of coverage under an insurance contract does not amount to bad faith."). As explained in *Broussard*, in North Carolina, claims for breach of the covenant of good faith and fair dealing and bad faith refusal to settle claims require a showing of something more than mere breach of contract dispute. *See* 155 F.3d at 347 ("Courts . . . relegate claims regarding . . . the terms contained in an agreement, and the interpretation of an agreement to the arena of contract law."). *See also Ballard v. State Farm Fire and Casualty Co.*, 714 F. Supp. 3d 630, 644 (E.D.N.C. 2024) (stating that bad faith does not encompass honest disagreement); *Michael Borovsky Goldsmith LLC*, 359 F. Supp. 3d at 314 (same).

Moreover, as explained in Part III.B.3.d., conclusory allegations and unsupported legal conclusions are insufficient to withstand the plausibility requirement. Therefore, the bare allegations that Ohio Security refused to pay for the claim, did not attempt in good

28

faith to settle the claim, and that Triad was compelled to institute litigation do not plausibly allege a breach of the covenant of good faith and fair dealing or bad faith refusal to settle. Therefore, these conclusory allegations cannot support Counts V–VI.

Accordingly, because Triad has failed to plead sufficient facts to state plausible claims for breach of the covenant of good faith and fair dealing and bad faith refusal to settle, Counts V–VI are dismissed for failure to state a claim upon which relief can be granted.[5,6]

### D.

### Economic Loss Doctrine (Counts I, VII, and VIII)

This court next considers whether to dismiss Counts I, VII, and VIII pursuant to the economic loss doctrine. The Complaint alleges three tort actions: Negligent Misrepresentation (Count I); Constructive Fraud (Count VII); and Fraud (Count VIII).

In order to pursue both a breach of contract claim and a tort claim, a plaintiff must allege that "the defendant . . . breached some duty other than a contractual duty, such that

---

[5] In response to the motion to dismiss, Triad requested to amend the Complaint to consolidate Counts III and IV as well as Counts V and VI, which Triad recognized as "duplicative." Pl. Resp. at 12. First, the motion to amend was not properly presented because Triad failed to submit a motion to the court and failed to provide the court with the proposed amended pleading. Fed. R. Civ. P. 15(a)(2); Local Rule 15.1. Beyond that, the motion is denied as moot because amending the Complaint would not change the outcome here.

[6] The parties dispute whether Counts III–VI should be partially dismissed as time barred to the extent the claims are premised on the 2019 Storm. We have determined that the Passed Off and No Repairs Allegations in Counts III–VI are time because they are premised on the 2019 Storm. However, we need not address whether Counts III–VI should be partially dismissed as time barred because we have dismissed Counts III–VI for failure to state a claim.

29

the tort claim is identifiable and distinct from the breach of contract claim." *Legacy Data Access, Inc. v. Cadrillion*, LLC, 889 F.3d 158, 166 (4th Cir. 2018) (citation and internal quotation marks omitted).

"North Carolina's economic loss doctrine . . . serves as a barrier to certain tort claims arising out of facts best considered through the lens of contract law." *Severn Peanut Co. v. Indus. Fumigant Co.*, 807 F.3d 88, 94 (4th Cir. 2015). The doctrine disallows a Plaintiff from veiling its contract claims in tort law. This is because a breach of contract does not ordinarily "give rise to a tort action by the promisee against the promisor." *Ellis*, 699 F.3d at 783 (quoting *N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 240 S.E.2d 345, 350 (N.C. 1978)). More specifically, the economic loss doctrine "prohibits recovery for purely economic loss in tort when a contract . . . operates to allocate risk." *Severn Peanut Co.*, 807 F.3d at 94 (citing *Kelly v. Ga.-Pac. LLC*, 671 F.Supp.2d 785, 791 (E.D.N.C. 2009)). North Carolina Courts have held, "when the injury resulting from the breach is damage to the subject matter of the contract[,] [i]t is the law of contract and not the law of negligence which defines the obligations and remedies of the parties[.]" *Rountree v. Chowan Cnty.*, 796 S.E.2d 827, 830–31 (N.C. App. 2017) (citation and internal quotation marks omitted) (cleaned up). *See N.C. State Ports Auth.*, 240 S.E.2d at 350–51 (explaining that, absent four enumerated exceptions, "a breach of contract does not give rise to a tort action by the promisee against the promisor"). *See also Cadrillion, LLC*, 889 F.3d at 158 (acknowledging that the economic loss doctrine bars tort claims such as breach of fiduciary duty, fraud, and intentional interference with contractual relations for alleged harm stemming from a contract dispute).

30

*North Carolina State Ports Authority v. Lloyd A. Fry Roofing Company* provides

four exceptions to the economic loss doctrine where "tort actions are viable if the injury

proximately caused by the promisor's negligence":

> (1) was an injury to the person or property of someone other than the promisee[;]
>
> (2) was to property of the promisee other than the property which was the subject of the contract, or was a personal injury to the promisee[;]
>
> (3) was loss of or damage to the promisee's property, which was the subject of the contract, the promisor being charged by law, as a matter of public policy, with the duty to use care in the safeguarding of the property from harm, as in the case of a common carrier, innkeeper or other bailee[; or]
>
> (4) was a wilful [sic] injury to or a conversion of the property of the promisee, which was the subject of the contract, by the promisor.

*Ellis*, 699 F.3d at 783–84 (quoting *N.C. State Ports Auth.*, 240 S.E.2d at 350–51 (cleaned

up)).

Ohio Security argues that North Carolina's economic loss doctrine requires

dismissal of Triad's three tort causes of action because these counts reflect that the dispute

is a contract dispute. Def. Mem. in Supp. of Mot. To Dismiss at 17 (citing Compl. ¶ 50

(alleging purported negligent misrepresentations are "affecting [Triad]'s right to coverage

under the Policy"); *id.* at ¶ 107 (alleging Ohio Security "denied wind and hail damage

coverage under the Policy based on misrepresentations of pertinent facts and insurance

policy provisions"); *id.* at ¶¶ 120–21 (alleging Ohio Security's purported false

representations resulted "in [Triad] not receiving the coverage it is duly owed pursuant to

31

the Policy")). Moreover, Ohio Security argues that none of the four exceptions to the economic loss doctrine apply.

Triad responds that it should be permitted to plead its tort claims in the alternative.[7] That is, Triad argues that it should be allowed to pursue the breach of contract and tort claims simultaneously. Triad further asserts that evidence has not yet demonstrated whether the "conduct arising from Triad's Tort Causes of Action is also a breach of the Policy," and that the economic loss doctrine does not apply at the motion to dismiss stage because "[Triad] has not had the opportunity to conduct discovery" or prove either claim. Pl. Resp. at 14. Finally, Triad asserts that the tort claims "fall into one of the exceptions to the Economic Loss Doctrine" but does not direct the court to any particular exception it believes is applicable. *Id.*

Ohio Security counters that Triad should not be allowed to plead in the alternative given that the claim fails as a matter of law. Ohio Security points out that "[Triad] does not identify any exception [to the rule that] it contends applies, nor does [Triad] identify which of the Complaint's allegations purportedly bring the Tort Counts within 'one of the exceptions.'" Def. Reply at 9. Finally, Ohio Security reiterates that "Triad's Complaint

---

[7] The court notes that Triad relies on Rule 8(e)(2) of the North Carolina Rules of Civil Procedure for this proposition. N.C. Gen. Stat. § 1A-1, Rule 8(e)(2). However, because jurisdiction in this case rests on diversity of citizenship, this court applies North Carolina substantive law and federal procedural law. *See Skyline Restoration, Inc. v. Church Mut. Ins. Co.*, 20 F.4th 825, 829 (4th Cir. 2021) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79–80 (1938)). Federal Rule of Civil Procedure 8(a)(3) allows for alternative pleading. But alternative pleading rules do not operate to allow a claim to continue that fails as a matter of law.

demonstrates that purported storm damage to the Property, the subject of the Policy, is the purported basis for the Tort Counts." *Id.*

A plaintiff may pursue a tort action only where there exists an "identifiable and distinct" tort claim. *Cadrillion*, LLC, 889 F.3d at 166. What is more, the tortious conduct must be accompanied "by a sufficient aggravating element such as fraud, malice, reckless indifference, oppression, insult, or willfulness." *ITW Charlotte, LLC v. ITW Com. Constr., N. Am. a division of Illinois Tool Works, Inc.*, No. 3:17-cv-473, 2017 WL 6542511, at *3 (W.D.N.C. Dec. 21, 2017) (citing *Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp.*, 15 F.3d 327, 331 (4th Cir. 1994)).

The court concludes that the injury resulting from the alleged breach of contract is damage to the Property, which is the subject matter of the contract. *See Rountree*, 796 S.E.2d at 830–31 (concluding that the economic loss doctrine bars tort actions "when the injury resulting from the breach is damage to the subject matter of the contract," because "[i]t is the law of contract and not the law of negligence which defines the obligations and remedies of the parties in such a situation"). And here, Triad has not alleged a duty owed it by Ohio Security separate and distinct from any duty owed under the contract. Triad has also entirely failed to allege any aggravating element accompanying the alleged tortious conduct.

For these reasons, and because none of the exceptions to the economic loss doctrine apply, the economic loss doctrine bars Triad's tort claims. *See N. Carolina State Ports Auth.*, 240 S.E.2d at 345 (applying the economic loss doctrine at the motion to dismiss stage). Therefore, Counts I, VII, and VIII are dismissed.

33

E.

Punitive Damages (Count IX)

Finally, the court considers whether to dismiss Count IX, which seeks punitive damages.

"North Carolina follows the general rule that punitive . . . damages are not allowed for breach of contract[.]" *Newton v. Standard Fire Ins. Co.*, 229 S.E.2d 297, 301 (N.C. 1976). *See Blis Day Spa, LLC v. Hartford Insurance Group,* 427 F. Supp. 2d 621, 636 (W.D.N.C. 2006) (same).

Ohio Security argues that no independent cause of action for punitive damages exists. This is so, it argues, because the only remaining Count -- a breach of contract count (Count II) -- cannot form a basis for punitive damages. Triad argues that the punitive damages action should not be dismissed because it properly pled its extra-contractual and tort causes of action, which, it asserts, would support the punitive damages count.

Counts I and III–VIII are dismissed. Therefore, only Count II remains. Because Count II is a breach of contract action, which cannot alone support a punitive damages claim in North Carolina, the punitive damages claim must also be dismissed.

Therefore, Count IX is dismissed.

IV.

For the foregoing reasons, Ohio Security's motion to dismiss Triad's complaint pursuant to Rule 12(b)(6) is GRANTED. Counts I and III–IX are each DISMISSED **with prejudice**. To the extent that Count II seeks relief for the alleged breach of contract premised upon the 2019 Storm, that claim is also DISMISSED **with prejudice**. What

34

remains, then, is the alleged breach of contract contained in Count II, but only to the extent it is premised on the 2023 Storm.  Thus, the breach of contract claim contained in Count II is limited to recovery for damages that emanate from the 2023 Storm.

*SO ORDERED*

This, the thirtieth day of July 2025.

Stephanie D. Thacker
United States Circuit Judge of the
Fourth Circuit Court of Appeals